IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LUCAS B. HORTON,                    §
                                    §
            Plaintiff,              §
                                    §
V.                                  §          No. 3:23-cv-69-K-BN
                                    §
WARNOCK FOR GEORGIA, INC.,          §
                                    §
            Defendant.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lucas B. Horton filed a *pro se* complaint alleging that Defendant Warnock for Georgia, Inc. ("Warnock") violated provisions of both the Telephone Consumer Protection Act ("TCPA") and the Texas Business and Commerce Code ("TBCC"). *See* Dkt. No. 3.

United States District Judge Ed Kinkeade referred Horton's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Horton obtained a summons. *See* Dkt. No. 5. And, roughly two months later, he moved the Clerk to enter default against Warnock, attaching to his motion a process server's declaration setting out that Warnock's registered agent was served on January 13, 2023. *See* Dkt. No. 6.

Horton then moved for default judgment. *See* Dkt. No. 9.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court

should grant the motion in part and deny it in part.

## Legal Standards

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price*

*Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Default judgment can also appropriate where a defendant fails to follow court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to a defendant's "delay and failure to comply with court rules").

Second, the Court must assess the merits of the plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered.*" Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Detailed allegations are not required, but "the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). "[I]n the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two other caveats apply. "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations omitted). And,

- 4 -

before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

## Analysis

## I.    The Court has jurisdiction over the subject matter and the parties.

Deciding the motion for default judgment "begins, as it must, by examining the Court's jurisdiction." *Wattiker v. Elsenbary Enters., Inc.*, No. 3:22-cv-940-B-BN, 2023 WL 5167023, at *3 (N.D. Tex. May 19, 2023) (cleaned up; quoting *Hammerschmidt v. Garland*, 54 F.4th 282, 287 (5th Cir. 2022)), *rec. accepted*, 2023 WL 5167019 (N.D. Tex. June 13, 2023).

Where Horton alleges more than insubstantial violations of the TCPA, a federal statute, there is federal question jurisdiction under 28 U.S.C. § 1331, an "independent basis of subject matter jurisdiction" that allows for supplemental jurisdiction under 28 U.S.C. § 1367 for the alleged state law violations. *Atkins v. Propst*, No. 22-10609, 2023 WL 2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)).

And where Horton alleges that Warnock texted his cell phone number in Texas to solicit campaign donations, the Court has jurisdiction over Warnock for the purpose of this lawsuit. *See Pavelka v. Pelican Inv. Holdings Grp., LLC*, No. 3:22-cv-74-B, 2022 WL 3159275, at *5 (N.D. Tex. Aug. 8, 2022) ("In TCPA cases, some district

courts have established specific jurisdiction over an out-of-state defendant when the defendant purposefully avails itself of the benefits of the forum state by making phone calls or sending texts to phone numbers with forum area codes." (collecting cases)); *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 568 (S.D. Tex. 2021) ("Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of 'the privilege of causing a consequence' in whatever state that call reaches." (quoting *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999))).

Such specific jurisdiction simply "demands a connection between the suit and the forum." *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 582 U.S. 255, 262 (2017)). Accordingly, it "focuses on the relationship among the defendant, the forum, and the litigation." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

## II.     The procedural requirements for default judgment have been met.

Warnock was served a copy of the summons and the complaint on January 13, 2023, *see* Dkt. No. 6-1, to which there was no response. The Clerk entered default on March 15, 2023. *See* Dkt. No. 7. And Warnock is not a natural person, so it cannot be a minor, an incompetent person, or in military service.

## III.    Horton's allegations support default judgment as to three of the six causes of action [Claims 1, 4, and 5].

Horton alleges generally that, after he registered for the National Do Not Call

List (the "DNC"), he received nine text messages from Warnock (from two separate numbers) on specific dates in late November and early December, all soliciting donations. *See* Dkt. No. 3, ¶¶ 20-23 ("The Links in the text led to the Defendant's donation website.").

While Horton alleges the months and the days on which he received each text, he does not allege which year. *See id.*, ¶ 22.

Regardless, the Court may take judicial notice that Senator Raphael Warnock was first a candidate for the United States Senate in 2020. *See* FED. R. CIV. P. 201; *Tsering Youdon v. B.I.A.*, 204 F. App'x 89, 91 (2d Cir. 2006) (per curiam) ("This Court may take judicial notice of adjudicative facts, such as current events, that materially bear on [a litigant's] claim[s]." (citations omitted)).

So, even if Horton received the texts on days in November and December 2020, because this lawsuit was filed on January 11, 2023, the Court should not find that the claims are facially time barred for the purpose of the motion for default judgment where TCPA claims are governed by a four-year statute of limitations, *see Aguilar v. Ocwen Loan Serv'g, LLC*, No. 3:17-cv-1165-B, 2018 WL 949225, at *3 (N.D. Tex. Feb. 20, 2018) (citing 28 U.S.C. § 1658(a)) – as are TBCC claims, *see Chambers v. Green Tree Serv'g LLC*, No. 3:15-cv-1879-M-BN, 2016 WL 8672775, at *8 (N.D. Tex. Sept. 30, 2016) (citing TEX. CIV. PRAC. & REM. CODE § 16.051), *rec. accepted*, 2016 WL 11664297 (N.D. Tex. Nov. 30, 2016).

As to the specific causes of action, Horton first alleges that Warnock's texting him violated 47 U.S.C. § 227(b)(1)(A)(iii). *See* Dkt. No. 3 at 7.

Section 227(b) of the TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A violation of § 227(b)(1)(A)(iii) occurs if: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-cv-337-M, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2021 WL 5040228, at *3

(N.D. Tex. Oct. 29, 2021) (cleaned up).

Considering the required use of an automatic telephone dialing system

("ATDS"),

[t]he TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). [And] the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 401 (2021) (internal quotations omitted). The Court held that, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 399. Thus to establish a claim under § 227(b), "the equipment in question must use a random or sequential number generator," not merely auto-dial stored numbers. *Id.* at 404.

*Id.* (citations modified).

Horton alleges that that his telephone number was generated by Warnock's

use of a "random or sequential generator," Dkt. No. 3, ¶ 27, and he has "plausibly

[pled] the use of an ATDS by alleging facts that indirectly suggest that such a device was used," *Horton v. Tex. Fed'n for Children PAC, Inc.*, No. 3:22-cv-2736-D, 2023 WL 3136422, at *4 (N.D. Tex. Apr. 27, 2023); *compare id.* at *5, *with* Dkt. No. 3, ¶¶ 22-27; *see also Hunsinger*, 2021 WL 5040228, at *3 ("[I]ndirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages," raise an inference that an ATDS was used." (collecting cases)).

In sum, there is a "sufficient basis in the pleadings" to enter judgment for the alleged violations of Section 227(b)(1)(A)(iii). *Nishimatsu*, 515 F.2d at 1206.

And, because Horton has alleged plausible violations of Section 227(b)(1)(A)(iii), he also has alleged plausible violations of Section 305.053(a) of the TBCC – Horton's fourth cause of action. *See Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-cv-1000-G-BK, 2023 WL 372066, at *6 (N.D. Tex. Jan. 23, 2023) (A "TBCC section 305.053(a) claim" is "derivative of [a] TCPA section 227(b)(1)(A)(iii) claim." (citing *Starling v. J Wales Home Sols. LLC*, No. 4:21-cv-1261-O, 2022 WL 1156021, at *4 (N.D. Tex. Apr. 19, 2022))).

Similarly, to the extent that Horton's Section 227(b)(1)(A)(iii) claims are plausible, he also has alleged plausible claims under 47 C.F.R. 64.1200(a)(1)(iii) – his fifth cause of action. *See, e.g., Williamson v. Irving K Motor Co. LLC*, No. 3:21-cv-1599-BH, 2022 WL 2053179, at *7-*8 (N.D. Tex. June 7, 2022) (analyzing the provisions in tandem); *see also Hunsinger v. Dynata LLC*, No. 3:22-cv-136-G-BT, 2023 WL 2377481, at *7 (N.D. Tex. Feb. 7, 2023) ("The TCPA and related FCC regulations prohibit any person or entity from using an ATDS or artificial or prerecorded voice to

call 'any telephone number assigned to a ... cellular telephone service.' 47 U.S.C. § 227(b)(1)(iii); 47 C.F.R. § 64.1200(a)(1)(iii)."), *rec. accepted*, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023).

But Horton has not alleged a plausible claim under Section 227(b)(1)(B) (or Section 227(c)) – his second cause of action, one premised on his DNC registration. *See Horton*, 2023 WL 3136422, at *2 ("[E]ven if the court construes Horton's second claim to be based on § 227(c) rather than § 227(b)(1)(B), 'political organizations are exempt from the DNC registry requirement.' '[T]he FCC has explained that calls involving surveys, market research, political or religious speech do not fall within the definition of telephone solicitation and will not be precluded by registering a number on the national DNC list.' As Horton's [complaint] is framed, [Warnock] is sending text messages for political purposes. Accordingly, the court dismisses Horton's second cause of action for failure to state a claim on which relief can be granted." (cleaned up)).

Nor has Horton alleged a plausible claim that Warnock "violated 47 C.F.R. § 64.1200(d)(1) by neglecting to maintain a written telemarketing policy" – his third cause of action – because "[h]e merely asserts that the text messages included a link to [Warnock's] website and requested donations for a political campaign," which is not sufficient to "plausibly plead[] a claim for relief based on a violation of § 64.1200(d)." *Horton*, 2023 WL 3136422, at *3 (further observing that other courts have held that "requests for donations made by or on behalf of a nonprofit political organization do not amount to telemarketing under the TCPA" (citations omitted)).

Similarly, Horton fails to set forth facts to plausibly allege a violation of Section 302.101 of the TBCC – his sixth (and final) cause of action – where he has not shown that soliciting a political donation violates Section 302 of the TBCC. *See Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-cv-1000-G-BK, 2022 WL 18673259, at *4 (N.D. Tex. Nov. 18, 2022) ("Even under the most liberal construction, Defendant's alleged solicitation of political donations does not make Defendant a seller acting on its own behalf nor Plaintiff a purchaser obligated to buy or rent an item as defined in section 302.001(7)."), *rec. accepted in applicable part*, 2023 WL 372066, at *6 (N.D. Tex. Jan. 23, 2023); *see also Powers v. One Techs., LLC*, No. 3:21-cv-2091-X, 2022 WL 2992881, at *4 (N.D. Tex. July 28, 2022) ("reject[ing] the plaintiffs' argument that 'call' under Chapter 302 includes "text messages" (footnote omitted)).

## IV. Consideration of other factors supports default judgment on the causes of action for which there is a basis to enter judgment [Claims 1, 4, and 5].

Default judgment is a harsh remedy, but Warnock's failure to answer Horton's complaint supports default judgment on the claims as set out above.

There has not been substantial prejudice against Warnock.

And there are clearly established grounds for default: Warnock failed to answer the complaint. There is no indication that Warnock's default was caused by good faith mistake or excusable neglect. And so the court would not feel obligated to set aside a default (should a motion to so be filed). *See Lindsey*, 161 F.3d at 893.

## V. The Court should award Horton damages.

Horton requests treble damages as to the violations of Section 227(b)(1)(A)(iii) and its analogues (Claims 1, 4, and 5). *See* Dkt. No. 3 at 7-10; 47 U.S.C. § 227(b)(3).

But he alleges no facts that would support that Warnock's alleged violations were willful or knowing. *See Noviello v. Adam Wines Consulting, LLC*, No. 3:22-cv-52-BN, 2023 WL 2776696, at *8 (N.D. Tex. Apr. 4, 2023) ("[W]hen interpreting 47 U.S.C. § 227(b)(3)'s [ ] 'willfully or knowingly' language for treble damages … , courts have held that '[t]he requirement of "willful[ ] or knowing[ ]" conduct requires the violator to know he was performing the conduct that violates the statute.'" (quoting *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015))); *cf. Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) ("[A] broad application of 'willful' or 'knowing' would significantly diminish the statute's distinction between violations that do not require an intent, and those willful and knowing violations that congress intended to punish more severely." (cleaned up)).

Horton also fails a show a basis to award him either an injunction or double (or triple) recovery as to the nine text messages alleged in the complaint.

First, the undersigned finds that Horton should be awarded statutory damages of $500 for each text message (for a total of $4,500) even though each text may support liability under the TCPA, its implementing regulations, and the TBCC. *See Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 WL 1787781, at *5 (S.D. Tex. Apr. 24, 2019) ("Because Shields has already been awarded $500 for Weaver's violation of Section 227(b), he is not entitled to any additional monetary damages for the corresponding violation of Section 305.053. *See Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA-376-SS, 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) ('There is no

indication in either the TCPA or in Texas's analogue that either legislative body intended to allow double recovery under both state and federal law for the same TCPA violations.'); *David L. Smith & Assocs., LLP v. Stealth Detection, Inc.*, 327 S.W.3d 873, 878 (Tex. App. – Dallas 2010, no pet.) (permitting plaintiff to recover $500 per call for violations of both the TCPA and Section 305.053, awarding a total of $16,500 for 33 calls)."), *rec. adopted*, 2019 WL 2103423 (S.D. Tex. May 14, 2019).

And, while Horton requests an injunction, the Court need not award him one based on the allegations of the complaint. *See, e.g.*, *id.* at *6 ("When a statute authorizes injunctive relief, the presumption is that the legislative branch still intended the courts to exercise their traditional equitable discretion in deciding whether to grant an injunction. Federal judges are 'not mechanically obligated to grant an injunction for every violation of law,' but rather must assess whether the relief requested comports with 'what is necessary, what is fair, and what is workable.'" (citations omitted)).

So, as set out above, because "[t]he damages set forth can be computed with certainty by reference to the pleadings," "the Court need not conduct a hearing to enter a default judgment and determine the amount of damages under Rule 55(b)(2)." *Crown Distrib. LLC v. Peacefull Choice Distrib. LLC*, No. 3:20-cv-3404-K, 2023 WL 1997927, at *9 (N.D. Tex. Jan. 27, 2023), *rec. accepted*, 2023 WL 1997785 (N.D. Tex. Feb. 14, 2023).

## Recommendation

The Court should grant the motion for default judgment [Dkt. No. 9] in part

and deny it in part by entering default judgment as to Claims 1, 4, and 5 against Defendant Warnock for Georgia, Inc. and awarding Plaintiff Lucas B. Horton $4,500 in damages.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 16, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE